UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| MELVIN R. PATTON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 1:18 CV 19 ACL |
| | ) |
| JASON LEWIS, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Petition of Melvin R. Patton for a writ of habeas corpus under 28 U.S.C. § 2254.

## I. Procedural History

Patton is currently incarcerated at the Southeast Correctional Center in Charleston, Missouri, pursuant to the sentence and judgment of the Circuit Court of the City of St. Louis, Missouri. (Doc. 15 at pp. 119-25.)

After a jury trial, Patton was found guilty of two counts of murder in the first degree, one count of assault in the first degree, one count of burglary in the first degree, and three counts of armed criminal action. *Id.* at pp. 105-12. The court sentenced him to consecutive sentences of life imprisonment without parole for the murder counts, concurrent life sentences for the assault count and each armed criminal action count, and a concurrent fifteen-year sentence for burglary. *Id.* at pp. 121-25.

Patton raised three points in his direct appeal of his convictions. Patton first argued that the trial court abused its discretion in admitting evidence regarding cellular tower "pings" associated with his cellular phone number. (Doc. 12-1 at p. 29.) He next argued that the trial court plainly erred when it overruled his objection to statements the prosecutor made during

1

closing argument regarding the pings. *Id.* at p. 31. Finally, Patton argued that the trial court abused its discretion in overruling his objection and admitting photographs of the victims' family into evidence. *Id.* at p. 32. On October 8, 2013, the Missouri Court of Appeals affirmed Patton's convictions. (Doc. 12-3.)

Patton filed a *pro se* motion for post-conviction relief under Rule 29.15. (Doc. 15-1 at pp. 8-25.) After appointment of counsel, an amended post-conviction relief motion was filed. *Id.* at pp. 30-56. In his amended motion, Patton argued that he received ineffective assistance of trial counsel in that counsel failed to request a cautionary instruction regarding the testimony of an in-custody informant. *Id.* Patton also argued that he received ineffective assistance counsel when trial counsel failed to move to admit as exhibits two newspaper articles detailing facts of his case. *Id.* The motion court denied Patton's motion and his request for an evidentiary hearing. *Id.* at pp. 67-72.

In his appeal from the denial of post-conviction relief, Patton raised the same two ineffective assistance of counsel claims. (Doc. 12-5.) The Missouri Court of Appeals affirmed the decision of the motion court. (Doc. 12-7.)

Patton filed the instant Petition on January 29, 2018, in which he raises the following grounds for relief: (1) the trial court abused its discretion in admitting evidence regarding cellular tower pings of Patton's phone; (2) the trial court plainly erred when it overruled Patton's objection to the State's closing argument regarding the cellular tower pings; (3) the trial court abused its discretion in overruling Patton's objection and admitting family photographs of the victims; (4) trial counsel was ineffective for failing to request a cautionary instruction after the testimony of Stephen Showers; and (5) trial counsel was ineffective for failing to move to admit as exhibits two newspaper articles. (Doc. 1.)

2

On May 11, 2018, Respondent filed a Response to Order to Show Cause. (Doc. 12.) Respondent argues that Patton's Petition should be denied because Ground Two is procedurally defaulted, and all of his claims fail on their merits.

Patton has also filed a Traverse, in which he provides additional argument in support of his claims. (Doc. 18.)

## II.　　Facts[1]

In the early morning hours of April 21, 2010, a hooded gunman entered a home at 3815 Pennsylvania Avenue in St. Louis and shot Jane Smith, her cousin Robert Johnson, and Smith's girlfriend Mary Williams.[2]  Smith's son, John Davis, looked on as the gunman shot his mother and Williams. Smith and Johnson died from their wounds.

At trial, both Williams and Davis testified that they recognized the gunman as Davis's father, Melvin Patton. Williams testified that she could see Patton's face despite the hood, and recognized his voice. Williams further testified that Davis grabbed Patton during the shootings and said, "Daddy, no, please don't kill my momma." Davis testified that he recognized his father's eyes and mouth. Additionally, Stephen Showers, Patton's cellmate before trial, testified that Patton confessed the shooting to him.

In his defense, Patton claimed that he was sleeping in Cahokia, Illinois, at the house of his cousin Marlon Tillman at the time of the shootings. Tillman and his ex-girlfriend Sarah Morice both testified that Patton was at the house when they went to sleep on the night of the shootings and when they woke up the next morning. Patton testified to this effect as well.

---

[1]The Court's recitation of the facts is taken from the decision of the Missouri Court of Appeals affirming Patton's convictions on direct appeal. (Doc. 12-3 at pp. 2-3.)
[2]The names of the victims and the minor child have been changed to protect their privacy.

3

### III. Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000).  With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Id.* at 405.  Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case."  *Id.*  Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.* at 410.  Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law."  *Id.* at 410.

4

IV.     Petitioner's Claims

1.     **Ground One**

In his first ground for relief, Patton argues that the trial court abused its discretion in admitting evidence regarding cellular tower pings of Patton's phone.

At trial, the State introduced this evidence to establish that Patton was in the vicinity of the crime when it was committed, and not sleeping at his cousin's house as he claimed. Patton argues that locating a phone in relation to the cell sites to which it connected is a subject for expert testimony, and that a *Frye* hearing was necessary before cell site data could be admitted. Patton filed a motion in limine to exclude this testimony, and timely objected at trial. (Doc. 15 at pp. 55-60; Doc. 15-2 at p. 553.)

Patton raised this claim in his direct Appeal. The Missouri Court of Appeals first held that the State's reading of the coordinates of cell sites from phone records and plotting them on a map was not a scientific procedure or technique subject to the *Frye* standard. (Doc. 12-3 at p. 5.) With regard to Patton's contention that the location of a cell phone in relation to the cell site to which it connected is a subject for expert testimony, the Court agreed. *Id.* at pp. 8-9. The Court stated that, to narrow down the area in which Patton's phone must have been to have connected to a particular cell site required analysis of many variables that influence cell site signal strength, which amounts to expert opinion evidence. *Id.* at p. 9. The Court, however, found that this error was not reversible. The Court explained:

> When the prejudice resulting from the improper admission of evidence is only evidence-specific and the evidence of guilt is otherwise overwhelming, reversal is not required." *State v. Barriner*, 34 S.W.3d 139, 150 (Mo. banc 2000). "In contrast, when the prejudice resulting from the improper admission of evidence is outcome-determinative, reversal is required." *Id.* Outcome-determinative prejudice occurs when "the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would

5

> have reached a different conclusion." *Id.* (quoting *State v. Roberts*, 948 S.W.2d 577, 592 (Mo. banc 1997)). Here, the State offered the cell site evidence to place Patton in the vicinity of the crime scene at the time of the shootings, rather than at his cousin's house as Patton claimed. Even without those records, however, the State presented overwhelming evidence that Patton was not only at the crime scene, but also the shooter. Two eye witnesses, one of the shooting victims and Patton's own son, identified Patton as the gunman. Also, Patton's cellmate testified that Patton confessed the shootings to him. Thus, we cannot say that Patton suffered prejudice from the admission of the cell site location evidence. *See State v. Foster*, 68 S.W.3d 530, 534 (Mo. App. E.D. 2001) (holding evidence overwhelming where several eyewitnesses who personally new defendant identified defendant and selected defendant from lineup); *State v. Sims*, 952 S.W.2d 286, 294 (Mo. App. W.D. 1997) (holding evidence overwhelming where three eyewitnesses identified defendant, defendant matched description of perpetrator, and defendant confessed to third party).

*Id.* at pp. 9-10.

The admissibility of evidence is a matter of state law and does not form a basis for habeas relief unless the trial error is so great as to amount to a denial of due process. *Bucklew v. Luebbers*, 436 F.3d 1010, 1018 (8th Cir. 2006). "It is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." *Bucklew*, 436 F.3d at 1018. "Rulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation." *Nebinger v. Ault*, 208 F.3d 695, 697 (8th Cir. 2000).

In this case, the state appellate court's determination that Patton was not prejudiced by the admission of the cell tower pings was reasonable. The evidence regarding Patton's guilt was overwhelming, consisting of multiple eyewitnesses including Patton's own son. Thus, Patton's due process rights were not violated by the admission of the testimony.

6

Accordingly, Ground One is denied.

**2.  Ground Two**

In his second ground for relief, Patton argues that the trial court plainly erred when it overruled Patton's objection to the State's comment on the cell tower ping evidence during closing argument.  Respondent argues that this claim is procedurally defaulted and fails on its merits.

Patton raised this claim in his direct appeal.  Because Patton did not include the claim in his motion for new trial, the Missouri Court of Appeals was able to review for plain error only. (Doc. 12-3 at p. 10.)  The Court declined to exercise its discretion to review for plain error, noting that "the overwhelming evidence of Patton's guilt indicates that no manifest injustice resulted from the State's comment during closing arguments."  *Id.* at pp. 10-11.

When a state court decides a claim on state procedural grounds, rather than on the merits, federal habeas review is barred, because the state court decision rests on independent and adequate state procedural grounds.  *Coleman v. Thompson,* 501 U.S. 722, 730 (1991).  A state court's discretionary plain-error review of unpreserved claims does not excuse a petitioner's procedural default.  *Clark v. Bertsch*, 780 F.3d 873, 876-77 (8th Cir. 2015).  Therefore, this Court is barred from reviewing Patton's claim unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Id.* at 750.  Petitioner has not done so.

Patton's claim also fails on its merits.  As discussed with regard to Patton's first ground for relief, Patton is unable to demonstrate prejudice from the admission of the cell tower ping evidence due to the overwhelming evidence presented of his guilt.  For the same reason, the

prosecutor's reference to this evidence in his closing evidence did not affect the outcome of the case.

Thus, Ground Two is denied.

### 3. Ground Three

In this third ground for relief, Patton argues that the trial court abused its discretion in admitting family photographs of the victims over Patton's objection. Patton contends that the photographs were irrelevant and served to inflame the passions and prejudices of the jury.

Patton raised this claim in his direct appeal. The Missouri Court of Appeals held as follows:

> [W]e think that Patton's allegation that the photographs inflamed the passions and prejudices of the jurors is overblown. The testimony regarding the photographs centered mainly on identification of the family members depicted therein. Through we fail to see the relevance in allowing the State to identify for the jury family members who had no connection to the crime, we again cannot say that Patton was so prejudiced by these photographs that they affected the outcome of the trial. As we have explained, the evidence of Patton's guilt was overwhelming.

(Doc. 12-3 at pp. 11-12.)

As previously stated, rulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation. *Nebinger*, 208 F.3d at 697. The decision of the Missouri Court of Appeals that the use of the photographs was not prejudicial was reasonable, especially in light of the evidence presented of Patton's guilt. Patton cannot demonstrate that his due process rights were violated by the admission of this evidence.

Thus, Ground Three is denied.

### 4. Ground Four

In Ground Four, Patton argues that trial counsel was ineffective for failing to request a

8

cautionary instruction after the testimony of Stephen Showers, an in-custody informant.  Mr. Showers testified that he shared a cell with Patton for approximately a week at the City Justice Center and that Patton confessed to the crimes.  (Doc. 15-2 at pp. 590-98.)  Patton contends that the jury should have been cautioned about Mr. Showers' testimony because "snitches comprise the single greatest risk of wrongful convictions."  (Doc. 1 at p. 13.)

Patton raised this claim in the post-conviction proceedings.  The Missouri Court of Appeals rejected Patton's claim, noting "Missouri has long held that '[e]xcept as may be specifically provided for elsewhere in MAI-CR, no other or additional instruction may be given on the believability of witnesses, or the effect, weight, or value of their testimony.'"  (Doc. 12-7 at p. 4) (citing MAI-CR 3d 302.01).  The court further stated that "Trial Counsel thoroughly cross-examined Showers, and had ample opportunity to dispute his credibility with the jury; that the jury found Movant guilty indicates they found the Showers' testimony credible."  *Id.*

To succeed on his ineffective assistance of counsel claim, Patton "must show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'"  *Strong v. Roper*, 737 F.3d 506, 517 (8th Cir. 2013) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  "'Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment.'"  *Id.* (quoting *Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006)).  The Court's review is governed by both § 2254(d) and *Strickland*, meaning the Court must be "'twice deferential: we apply a highly deferential review to the state court decision; the state court, in turn, is highly deferential to the judgments of trial counsel.'" *Strong*, 737 F.3d at 517 (quoting *Nooner v. Norris*, 402 F.3d 801, 808 (8th Cir. 2005)); *see also Harrington v. Richter*, 562 U.S. 86, 105 (2011) (stressing the difficulty of

9

overcoming both § 2254(d) and *Strickland* "when the two apply in tandem"); *Forrest v. Steele*, 764 F.3d 848, 853 (8th Cir. 2014) (same).

Here, the record before the Court reflects the Missouri Court of Appeals reasonably applied *Strickland* when it rejected Patton's claim.  The Court found that Patton's claim was meritless because the instruction Patton sought was not approved under Missouri law.  Counsel was not ineffective for failing to request an unapproved instruction.

Thus, Ground Four is denied.

### 5.     Ground Five

In his fifth and final ground for relief, Patton argues that counsel was ineffective for failing to move to admit as exhibits two newspaper articles that set out the facts of the crimes. He contends that the articles would have shown that Mr. Showers read about his case in the media, thereby damaging Showers' credibility.

Patton raised this claim in the post-conviction proceedings.  The Missouri Court of Appeals rejected the claim, finding Patton was unable to demonstrate prejudice.  (Doc. 12-7 at pp. 6-8.)  The Court stated that the evidence presented at trial in favor of Patton's guilt was "strong" and "overwhelming."  *Id.* at p. 7.  The Court further noted that the jury was made aware of the fact that Mr. Showers "could have derived information about the case from the news" on cross-examination of the investigating detective.  *Id.*

The appellate court properly applied *Strickland* in finding Patton was unable to demonstrate prejudice.  As previously discussed, multiple eyewitnesses identified Patton as the shooter, including Patton's own son.  Further, on cross-examination, defense counsel questioned the investigating detective regarding newspaper articles "releasing details that these murders were based over a custody issue," that Patton was masked and dressed in all black clothing, and

that Patton's son kept stating "please don't shoot mommy, daddy." (Doc. 15-2 at pp. 644-45.) In his closing argument, defense counsel again referred to the newspaper articles in attacking Flowers' credibility. (*Id.* at pp. 891-92.) Thus, the decision of the Missouri Court of Appeals was reasonable.

Accordingly, Ground Five is denied.

## V. Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserved further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Patton has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings. No Certificate of Appealability will be issued.

## ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED and DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

/s/ Abbie Crites-Leoni  
ABBIE CRITES-LEONI  
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of March, 2021.